UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SALVATORE CAPODICASA,<br><br>    Plaintiff,<br><br>v.<br><br>TOWN OF WARE, DENNIS HEALY,<br>CHRISTOPHER DESANTIS, DIANE<br>GLINIECKI,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*<br>*   Civil Action No. 17-30079-MGM<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 6)

August 17, 2018

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff, Salvatore CapoDiCasa, who is deaf, alleges he was arrested and detained on April 6, 2014, following a traffic stop in Ware, Massachusetts. He asserts that despite knowing of his disability, the officers who interacted with him failed to take necessary and required steps to facilitate communications with Plaintiff, causing him acute and ongoing fear, confusion, and anxiety. He brings this action against the Town of Ware (the "Town" or "Ware"); Dennis Healy, who was chief of police at the time of the stop; Christopher DeSantis, the arresting officer; and Diane Gliniecki, another Ware police officer who interacted with Plaintiff following his arrest. In his six count complaint, Plaintiff asserts a claim for negligence against the Town (Count I); claims against the Town, DeSantis, Gliniecki, and Healy for discrimination based on disability in violation of Title II of

the Americans with Disabilities Act ("ADA"), 42 U.S. § 12131 et seq. and § 504 of the Rehabilitation Act of 1973 (Count II) and the Massachusetts Public Accommodations Law, MASS. GEN. LAWS ch. 272, §§ 92A and 98 (Count III) and for violation of the Massachusetts Equal Rights Act, MASS. GEN. LAWS ch. 93, § 103 (Count IV); a claim for intentional and reckless infliction of emotional distress against DeSantis, Gliniecki, and Healy (Count V); and a claim for retaliation against the Town, DeSantis, Gliniecki, and Healy (Count VI).

This matter was initially filed in state court. Defendants removed it to this court. (Dkt. No. 1, Notice of Removal) and then filed a Motion to Dismiss for Failure to State a Claim as to Plaintiff's state law claims. (Dkt. No. 6.) Defendants seek dismissal of all claims, except the ADA and Rehabilitation Act claims of Count II asserted against the Town. In his opposition, Plaintiff agreed to the dismissal of his ADA and Rehabilitation Act claims (Count II) against individual defendants, and that his claims for intentional infliction of emotional distress (Count V) should be dismissed as to the individual defendants in their official capacity. (Dkt. No. 12.)

## II.     JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims in Count II, which allege violations of the ADA and the Rehabilitation Act. The other claims arise under state law. Federal courts may exercise supplemental jurisdiction over state law claims related to and brought together with claims arising under federal law. 28 U.S.C. § 1367.

## III.     FACTUAL ALLEGATIONS

The following is a summary of the facts set out in the Complaint. Plaintiff is a resident of Ware. (Dkt. No. 1-1, Compl. ¶ 9.) His primary mode of communication is American Sign Language ("ASL"). (*Id.* at ¶ 11.) He has a limited English vocabulary; his level of comprehension of written

2

English is equivalent to a grammar school student and he is not proficient at reading lips. (*Id.* at ¶¶ 11-12.) Plaintiff wears a hearing aid that uses vibration to alert him to the presence of sound, but does not enable him to understand speech. (*Id.* at ¶ 13.)

At approximately 5 pm on April 5, 2014, Plaintiff was driving his truck in Ware when he was stopped by DeSantis. (*Id.* at ¶ 16-17.) Prior to the stop DeSantis had been informed by police dispatch that Plaintiff is deaf. DeSantis also believed he had probable cause to arrest Plaintiff on domestic violence charges. (*Id.* at ¶¶ 18-19.) The Ware police department had written policies regarding how officers should interact with hearing impaired individuals. (*Id.* at ¶ 77-78.) Among other things, these policies required officers to determine the method of communication preferred by a hearing impaired person, avoid assuming deaf individuals can communicate in written English, learn to communicate using basic sign, obtain ASL interpreters for deaf individuals who use ASL, and abstain from using most field sobriety tests with hearing impaired individuals. (*Id.* at 78.)

After stopping Plaintiff, DeSantis took steps to determine whether Plaintiff had been operating under the influence. (*Id.* at ¶ 21.) He tried to administer field sobriety tests that were not on the list of permissible tests to use with hearing impaired individuals contained in the written police policies. (*Id.* at ¶ 21.) DeSantis also administered a portable breath test. (*Id.* at ¶ 32.) Plaintiff was not able to understand the instructions for the field sobriety tests and was not able to give consent to the breath test. (*Id.* at ¶¶ 35-39.) Despite efforts by Plaintiff to inform DeSantis that he is Deaf, uses ASL to communicate, and needed help from an interpreter, DeSantis quickly placed handcuffs on Plaintiff, which prevented him from using ASL, and took no steps to learn Plaintiff's preferred method of communication, did not attempt to use ASL to communicate with Plaintiff, and did not take steps to obtain the services of an ASL interpreter. (*Id.* at ¶¶ 22-28.) Due to his inability to communicate effectively with police officers, Plaintiff was unable to make arrangements to have

3

his truck retrieved by friends or family and he is not aware of police officers seeking alternatives to having the truck towed. (*Id.* at ¶¶ 41-42.) As a result, his truck was towed. (*Id.*)

Following Plaintiff's arrest, he was transported to the Ware police station. (*Id.* at ¶ 44.) Without obtaining an interpreter or even asking Plaintiff if he required an interpreter, DeSantis and Glinieki questioned Plaintiff after he arrived at the Ware police station. (*Id.* at ¶¶ 45, 47.) Plaintiff was not able to understand what was being said to him during the interview. (*Id.* at ¶ 46.) While Plaintiff's arrest was being processed, Plaintiff perceived anger and hostility from Gliniecki and DeSantis, both of whom appeared to him to become frustrated and angry in response to the communication difficulties he experienced. (*Id.* at ¶¶ 60-62.) Approximately half way through the booking and interview process, officers asked, for the first time, whether Plaintiff could read English. (*Id.* at ¶ 53.) He answered no, that he communicates using ASL and asked for an interpreter. (*Id.* at ¶ 54.) A professional interpreter was not provided and no family members or friends were permitted to serve as amateur interpreters, even though his sister contacted the Ware police department in order to find out what was happening with Plaintiff. (*Id.* at ¶¶ 55-57.) Plaintiff was not informed of any steps being taken to provide him with an interpreter and, he believes, the Ware Police Department did not have any agreements in place to obtain ASL interpreter services when needed. (*Id.* at ¶¶ 58-59.)

Despite his lack of proficiency with written English, Plaintiff was presented with written forms. (*Id.* at ¶ 48.) These forms included substantive information about Plaintiff's rights, including his right to an independent medical examination. (*Id.* at ¶ 52.) Plaintiff signed forms he did not comprehend because he found the behavior of Gliniecki and DeSantis frightening and did not understand his rights. (*Id.* at ¶¶ 63-65.) Additionally, as a result of communication difficulties, Plaintiff spoke about matters related to the alleged domestic violence incident that he otherwise would not have discussed. (*Id.* ¶¶ 75-76.)

4

While at the Ware police station, Plaintiff requested an attorney and tried to use an ASL video translation application on his mobile phone to contact an attorney. (*Id.* at ¶¶ 67-72.) No attorney was provided to him and his attempt to use his mobile phone was unsuccessful because the battery on his phone was low and he was not permitted to charge his phone. (*Id.*) Because Plaintiff was not able to contact an attorney he was unable to arrange his release. (*Id.* at ¶ 76.) As a result he was held in custody until his arraignment the next day. (*Id.*)

On April 7, 2014, Plaintiff was arraigned and charged under Massachusetts law with operating under the influence. (*Id.* ¶ 81.) While preparing a defense in that case, Plaintiff sought discovery from the Ware police department related to the policies and procedures for conducting field sobriety tests on deaf individuals. (*Id.* at ¶ 82.) In the months following Plaintiff's request for discovery, Ware police stopped Plaintiff's truck on several occasions when he was not driving it. (*Id.* at ¶ 84.) In each case the operator of the truck was operating the truck lawfully. (*Id.*)

## II.  DISCUSSION

"To survive a motion to dismiss, the complaint must state a claim for relief that is plausible on its face." *Flock v. U.S. Dep't of Transp.*, 840 F.3d 49, 54 (1st Cir. 2016). "Setting aside any statements that are merely conclusory, [this court] construe[s] all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 (1st Cir. 2013).

A.  <u>Discrimination Claims Under Massachusetts State Law</u>

Before addressing the specific claims made by Plaintiff and for which dismissal is sought by Defendants, the court briefly outlines the scope of Massachusetts law regarding discrimination claims. In the Massachusetts Public Accommodation Law, Massachusetts defines places of public

5

accommodation and bars discrimination based on a number of criteria, including disability, in such places. MASS. GEN. LAWS c. 272, §§ 92A, 98. A separate statute, Chapter 151B ("151B") bars discrimination in other situations and establishes the Massachusetts Commission Against Discrimination ("MCAD") to investigate and adjudicate discrimination claims. MASS. GEN. LAWS c. 151B, §§ 4, 6. The practices made unlawful under 151B are discrimination by private and public employers against employees or prospective employees; by those in the insurance or bonding business, by persons in the mortgage business and persons in the business of selling or renting real estate. *Id.* at § 4. Individuals bringing claims pursuant to 151B are required to first file a complaint with MCAD "within 300 days after the alleged act of discrimination." *Id.* at § 5. As to claims brought under § 4 of 151B, the administrative procedures set out in § 5 provide the exclusive remedy while such proceedings are pending. *Id.* at § 9. In additional to applying to claims made actionable under 151B, the administrative complaint procedures are also applicable to claims brought pursuant to the Public Accommodations Law. *Id.* at § 5; *see also Borne v. Haverhill Golf & Country Club, Inc.*, 791 N.E.2d 903, 909 (Mass. App. Ct. 2003). However, the "institution of proceedings under [§ 5], or an order thereunder, shall not be a bar to proceedings under [the Public Accommodations Law]." MASS. GEN. LAWS c. 151B, § 5. Finally, the text of 151B specifies that it is to be construed liberally to accomplish its purposes, but also that its provisions shall not "be deemed to repeal any provision of any other law . . . relating to discrimination." Mass. Gen. Laws c. 151B, § 9; *see also Local Finance Co. of Rockland v. Mass. Comm. Against Discr.*, 242 N.E.2d 536, 539 (Mass. 1968) (ruling that provisions of 151B barring discrimination in specific financial transactions did not supersede application of the Public Accommodation Law to financial businesses).

B.        <u>Negligence Under the Massachusetts Tort Claims Act (Count I)</u>

Plaintiff's theory as to Count I is that the Town is liable under the Massachusetts Tort Claims Act ("MTCA"), Mass Gen. Laws ch. 258, § 1 *et seq.*, because (1) Healy, as the police chief, was negligent in training and supervising his officers regarding interactions with hearing impaired individuals and (2) DeSantis and Gliniecki were negligent for failing to provide him with the communication aids necessary to insure that he understood what was happening to him and what rights he had when they took him into custody. Defendants argue the claim against Healy should be dismissed because Plaintiff has not pleaded facts supporting a claim of negligent training and supervision. As to the claims against DeSantis and Gliniecki Defendant asserts such a claim is barred both under the MTCA itself and under 151B. In the case of the MTCA, Defendants argue claims against public employees are only permitted if a private individuals could be sued in the same circumstances. With respect to 151B, Defendants assert Plaintiff's claim is barred because that statute provides the exclusive remedy for the type of grievances asserted by Plaintiff.

The court finds, at this stage, the allegations against Healy are sufficient to support a claim of negligent failure to train and supervise. Plaintiff asserts there were written policies in place regarding the provision of ASL interpreter services, but that the Ware police department did not have agreements in place that would have enabled officers seeking to comply with the policy to obtain ASL interpreter services in a timely manner. Additionally, the various and repeated violations alleged by two officers over a lengthy period of time provide a sufficient basis for this court, crediting those allegations as it must at this stage, to infer the officers had not received adequate training regarding the written policies for interacting with hearing impaired individuals.

The court turns next to Defendants' argument that the MTCA bars the claims against DeSantis and Glinieki. The MTCA was enacted by the Massachusetts legislature as a limited waiver of sovereign immunity by creating "a cause of action against public employers for the negligent or

7

wrongful acts or omissions of their employees acting within the scope of their employment." *Nelson v. Salem State College*, 845 N.E.2d 338, 348 (Mass. 2006). Public employers cannot be sued under the MTCA for their employees "intentionally tortious conduct," and so "public employees may be personally liable for their intentionally tortious conduct" under the MCTA. *Id.*

Defendants' assert Plaintiff's claim is barred by language in § 2 of the MTCA, stating that public employers may be liable for the negligence of a public employee "acting within the scope of his office or employment," but only "in the same manner and to the same extent as a private individual under like circumstances" would be liable. MASS. GEN. LAWS ch. 258, § 2. They argue the Town cannot be liable under § 2 because the duty allegedly breached, to provide communication assistance to hearing impaired individuals, is not one imposed on private individuals. Defendants go on to argue that even if such liability were possible under § 2, it is barred under § 10(h), which protects municipalities from suits against police departments for failing to provide police protection.

Defendants cite no support for their argument that language in § 2 bars negligence claims against municipalities related to duties imposed on a municipal employee in the course of employment and the very existence of § 10(h) undercuts the proposed reading. The Massachusetts legislature enacted § 10(h) following the Massachusetts Supreme Judicial Court's decision in *Jean W. v. Commonwealth*, 610 N.E.2d 305, 307-14 (Mass. 1993), in which the court stated its intention to abolish the "public duty rule." Until that announcement, the "public duty rule" had limited municipal liability to cases in which a plaintiff could demonstrate they were owed a special duty beyond what was owed to the general public. The court explained that "[t]he responsibility a public employee may have to perform an act may arise from a statute or ordinance, but the duty to perform the act with reasonable care arises from the common law of negligence." *Jean W.*, 610 N.E. at 312. In recognizing that public employees take on duties in the course of their employment in a way that

8

is not meaningfully different from private employees who may take on additional duties in the course of employment, the court rejected the reading of § 2 proposed by Defendants. *Id.*

Defendants' argument about the applicability of § 10(h) is similarly flawed. Section 10(h) provides an exception to MTCA liability as to claims for to "negligent protection, supervision or care of persons in custody," language broad enough on its face to cover this case. However, courts have "construed [§ 10(h)] to 'immunize a municipality when the criminal acts of a third person are a cause of a plaintiff's harm,'" but not to provide immunity where, as alleged here, the harm was directly caused by the officer's conduct. *Rivera v. City of Worcester*, Civ. No. 12-cv-40066-TSH, 2012 WL 5354153 (D. Mass. Oct. 26, 2012) (quoting *Carleton v. Town of Framingham*, 640 N.E. 2d 452, 456 (Mass. 1994)).

The court next considers Defendants' argument that Plaintiff cannot bring a negligence claim under the MCTA because such a claim is preempted by 151B as the allegedly negligent conduct was also discrimination in violation of 151B and, where 151B is applicable, it is, by its terms, the only remedy available. The cases cited by Defendants in support of this argument all involve employees bringing claims against employers. Employment discrimination, along with discrimination in housing, credit, and mortgage lending are all actionable under § 4 of 151B, while Plaintiff's claims arise from a very different set of circumstances. Defendants have not cited any authority recognizing a cause of action arising under 151B on similar facts. Additionally, as Defendants have acknowledged, exclusivity under 151B does not bar plaintiffs from asserting claims "based on preexisting tort law or constitutional protections," and Plaintiff has asserted common law negligence claims based on a breach of statutory duties police officers owe to members of the public. *Charland v. Muzi Motors, Inc.*, 631 N.E.2d 555, 559 (Mass. 1994). Plaintiff frames his negligence claim as a breach of a general duty on the part of police officers not to harm the public. For these reasons, the court denies Defendants' motion for dismissal of Count I.

C. <u>Disability Discrimination Under the Massachusetts Public Accommodations Law (Count III)</u>

Defendants argue Plaintiff's claim of disability discrimination under the Massachusetts Public Accommodations Law is barred because he filed his MCAD complaint more than 300 days after the date of his arrest. There is no dispute that individuals, like Plaintiff, who have grievances under the Public Accommodations Law are permitted to access the administrative remedies available through MCAD by filing a complaint with MCAD no more than 300 days after the allegedly discriminatory conduct. MASS. GEN. LAWS ch. 151B, § 5; 804 Code Mass. Regs. 1.10(2). The parties disagree as to whether a party is barred from litigating a claim under the Public Accommodations Law if they do not first file a timely MCAD complaint. On its face, the plain language of § 5 of 151B does not require administrative exhaustion prior to the filing of a complaint pursuant to the Public Accommodation Law. *But see Borne*, 791 N.E.2d at 909 (stating without discussion that MCAD exhaustion was required in case involving claim under Public Accommodation Law). Neither party has referenced the statutory language. Both instead rely on case law, though none of the cases cited are directly on point.

Plaintiff points to language in *Lesley v. Chie*, 81 F. Supp. 2d 217, 226 (D. Mass. 2000), stating that the Massachusetts Public Accommodation Law is to be interpreted "hand in hand" with Title II of the ADA and asks the court to infer administrative exhaustion is not required here because it would not be required under the ADA. Defendants cite, in turn, to several cases stating the requirement that an employee must file a timely administrative charge before bringing an ADA claim in court. The cases cited by the parties are not in conflict, they simply apply to two different sections of the ADA. Title I of the ADA governs disability discrimination claims brought in the employment context and incorporates the administrative prerequisites set out in Title VII of the Civil Rights Act of 1964. *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 (1st Cir. 1999). On the other hand, such administrative exhaustion is not required under Title II, which adopts the administrative procedures

10

of the Rehabilitation Act, rather than Title VII. *Mitchell v. Mass. Dept. of Correction*, 190 F. Supp. 2d 204, 209-10 (D. Mass. 2002). Given the facts of this case, the court is not persuaded by arguments derived from cases involving Title I of the ADA and discrimination in the employment context. Both the language of § 5 of 151B and the similarities between the Public Accommodation Law and Title II of the ADA, persuade the court that 151B exhaustion was not a necessary prerequisite to Plaintiff's suit under the Public Accommodation Law. Defendants' motion to dismiss as to Count III is denied.

D.    Disability Discrimination Under the Massachusetts Equal Rights Act (Count IV)

With respect to Plaintiff's claims of disability discrimination under the Massachusetts Equal Rights Act (Count IV), Defendants argue dismissal is appropriate because these claims are preempted by Plaintiff's claim under the Public Accommodation Law. Plaintiff concedes that if the court decides the Public Accommodations Law is applicable in this case, he does not have a viable claim under the Massachusetts Equal Rights Act (Count IV). He argues, however, that dismissal of Count IV is premature at this stage of the litigation, and he should be allowed to proceed with both counts as alternative bases for liability until after discovery has been completed. The court agrees. Defendants' motion to dismiss as to Count IV is denied.

E.    Intentional and Reckless Infliction of Emotional Distress (Count V)

Plaintiff concedes his claims for intentional and reckless infliction of emotional distress against the individual defendants in their official capacity are barred by the MTCA. With respect to the claims asserted against those defendants in their individual capacity, Defendants argue dismissal is appropriate because the claims are preempted by 151B. For the reasons previously discussed with

respect to Count I, the court will not dismiss Count V based on 151B preemption. The court does, however, dismiss the claim against Healy.

In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove "the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct." *Tetrault v. Mahoney, Hawkes & Goldings*, 681 N.E.2d 1189, 1197 (Mass. 1997) (citations omitted). Additionally, the alleged conduct must be "extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community." *Id.* Plaintiff's allegations with respect to Healy are limited to his failure to properly train and supervise DeSantis and Glinieki. The alleged facts are silent as to Healy's intent and the actions attributed to him cannot be considered extreme or outrageous. *See, e.g., Horan v. Cabral*, 277 F. Supp. 3d 229, 236 (D. Mass. 2017) (dismissing intentional infliction of emotional distress claim against sheriff who was notified of an inmate's medical needs and took no action as supervisor of prison). Count V is, therefore, dismissed as to Healy, but not as to DeSantis and Glinieki, in their individual capacities.

F. Retaliation (Count VI)

Finally, the court considers Defendants' motion to dismiss Plaintiff's retaliation claim against all defendants. Plaintiff's complaint cites no statutory basis for his retaliation claim. Defendants argue dismissal is appropriate because there is no common law claim for retaliation. In response Plaintiff asserts his retaliation claim is brought pursuant to 151B. In support he cites cases involving employment discrimination. As discussed above, this is not a case alleging discrimination in the context of employment. Employment discrimination cases offer little guidance that is relevant in this case because employment discrimination and public accommodation are two distinct types of claims addressing different types of discrimination and actionable under different statutes. As Plaintiff has

not established an applicable legal basis for his retaliation claim, Defendants' motion to dismiss is granted as to Count VI.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim [Dkt. No. 6] is hereby ALLOWED in part and DENIED in part. As to Count II against the individual defendants, Count V against Healy and the other individual defendants in their official capacity, and Count VI as to all defendants the motion is ALLOWED. The motion is DENIED as to the remaining counts. This case is now referred to Magistrate Judge Robertson for pretrial management.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge